**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| ERIC C. RAJALA, as Bankruptcy Trustee for ETHANEX ENERGY, INC., | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )         Case No. 08-CV-2638-CM-DJW |
| | ) |
| MCGUIRE WOODS, LLP, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT MCGUIREWOODS'S MEMORANDUM IN
<u>SUPPORT OF ITS MOTION FOR ENTRY OF CLAWBACK PROVISION</u>**

This complex case involves allegations of fraud, tortious interference, legal malpractice, negligent supervision, breach of fiduciary duty, and violations of the Securities Exchange Act of 1934 and Kansas Uniform Securities Act directed at Defendant McGuireWoods, a large law firm.  Plaintiff served its first Requests for Production of Documents on McGuireWoods on December 12, 2009, and those requests implicate sensitive information from the internal files of McGuireWoods.

Although this Court entered a Protective Order on January 4, 2010, concerning the treatment of Confidential Information, that Order does not include a "clawback provision."  The inclusion of a clawback provision in the Protective Order was considered by the parties – and urged by McGuireWoods.  Significantly, however, Plaintiff's cross-motion for protective order urged the Court that "[t]here is no need to force the [clawback] issue here," because it was "likely in this case" that the parties would enter into a stipulation concerning privilege and clawback issues.  Plaintiff's Cross-Motion for Protective Order, at p. 4.

McGuireWoods stands ready to produce documents and information responsive to Plaintiff's Requests but, despite Plaintiff's earlier clawback "stipulation" argument, Plaintiff now

refuses to enter into a clawback agreement.  McGuireWoods thus respectfully suggests that "a need to force the issue here" has arisen, and requests that the Court order entry of a clawback provision.[1]

## ARGUMENT

This Court previously suggested, during the October 2009 Scheduling Conference, that the Protective Order in this case should include a provision addressing the inadvertent production of privileged documents in discovery.  Consequently, the clawback agreement issue was raised in the parties' cross motions for protective order; specifically, McGuireWoods proposed a standard clawback provision.  Plaintiff, however, opposed the provision as out-of-place "in an agreement wholly devoted to confidentiality protections."  Plaintiff's Cross-Motion for Protective Order, at p. 4.  And, stating that there was "no need to force the issue here," Plaintiff explained that the parties were "likely" to enter into a "commonplace" stipulation concerning "waiver of privileges and clawbacks."  *Id*.  Because this case presents significant document review volume issues, and Plaintiff has refused to enter into a clawback agreement, McGuireWoods now seeks an order from this Court entering a clawback provision.

This Court is empowered by Federal Rule of Evidence 502(d) to order that privileges and protections are "not waived by disclosure connected with the litigation pending before the court."  The purpose of Rule 502(d) is to limit the costs of privilege review and retention, especially in cases, like the present, involving electronic discovery; thus, the Rule contemplates the entry and enforcement of clawback arrangements.  Advisory Committee Notes, Rule 502(d).  Notably, the Advisory Committee explains that a Rule 502(d) order "is enforceable whether or not it

---

[1] A Proposed Order for Entry of Clawback Provision is being submitted on the date of this Motion's filing to the Court via e-mail, pursuant to the Court's ECF Manual, Rule E.2.

memorializes an agreement among the parties to the litigation[; p]arty agreement should not be a condition of enforceability of a federal court's order."

Despite Plaintiff's reluctance to enter into a clawback agreement, a clawback provision is necessary here, and will indeed benefit all parties.  In early discovery stages, clawback provisions addressing the preservation of privileges and work-product protections in the event of inadvertent disclosures can be powerful tools to preclude contentious, costly, and time-consuming discovery disputes.  This is particularly true in ESI-intensive and rolling production cases in which high ESI and hard copy document review volumes and recurring disclosure obligations increase the "inevitable" risks of inadvertent disclosures.  *See Coburn Group, LLC v. Whitecap Advisors LLC*, 640 F. Supp. 2d 1032, 1039 (N.D. Ill. 2009) (noting that "where discovery is extensive, mistakes are inevitable, and claims of inadvertence are properly honored so long as appropriate precautions are taken." (internal citations omitted)).

Because it was anticipated that a high volume of both ESI and hard copy documents will ultimately need to be reviewed and exchanged in the discovery phase of this case, the parties agreed to a rolling production of documents.  McGuireWoods has already reviewed a significant number of documents and is poised to make its first production to Plaintiff.  *See* Declaration of Anne McCray, attached hereto as Exhibit 1.  Because McGuireWoods's volume predictions have proven all too true, however, as the McCray Declaration demonstrates, a clawback provision should be ordered by the Court before production actually occurs.

McGuireWoods does not intend to use the clawback provision as a free pass not to undertake a reasonable privilege review.  Illustratively, in its pre-production document reviews to date, McGuireWoods has engaged in multi-tiered review phases to identify responsive documents from various document sources – including the Ethanex client file and the universe of

3

documents that McGuireWoods produced to the SEC, the bankruptcy receiver, and the Department of Justice – and to identify documents subject to privileges and protections.  To date, over 107,900 pages of more than 12,300 documents have been reviewed (*see* McCray Declaration, at ¶ 4); these numbers alone indicate a high potential for risk.  *See Coburn Group, LLC,* 640 F. Supp. 2d at 1039 (characterizing document reviews involving 72,000 pages of potentially responsive documents, and production ranges of 7,864 to 25,000 documents as "large" and "extensive," and noting that in such high volume reviews and productions, "mistakes are inevitable").

The numbers do not end there.  First, these numbers do not reflect McGuireWoods's and its counsel's time spent identifying and isolating the relevant sources of documents and information, and subsequently reviewing documents and information for responsiveness and applicable privileges.  Further, internal personnel files, marketing materials, thousands of documents sourced to McGuireWoods's Worksite Management system, and e-mail files for relevant McGuireWoods personnel still need to be reviewed.  Even when the e-mail files review is considered in isolation, and assuming that initial search term queries are run to identify responsive documents – as has been proposed to Plaintiff – McGuireWoods anticipates that, at a minimum, between approximately 15,000 and 18,400 e-mails, comprised of an unknown number of pages, will still need to be reviewed.

Underlying these volume issues lies the significant fact that McGuireWoods is a large law firm that represents thousands of clients, to each of which McGuireWoods owes duties to protect privileges and confidences shared.  Thus, even simple instances of human error that might occur in a law firm's day-to-day activities, such as clerk mis-filings of paper documents,

e-mails accidentally stored in the wrong inbox client folder, etc., could result in the inadvertent disclosures of other clients' privileged information.

While counsel for McGuireWoods has taken and will continue to take diligent and reasonable precautions to guard against the inadvertent disclosure of privileged and otherwise protected materials, the sheer volume of documents ultimately requiring review in this case, coupled with McGuireWoods's duties to its clients firm-wide, warrant the additional precaution of a clawback provision.  Moreover, Plaintiff should not be permitted to avoid this Court's entry of a clawback provision by having first argued that it was likely to stipulate to a clawback agreement, and then by later refusing to do so.

### CONCLUSION

Because the inadvertent production risks to McGuireWoods in the absence of such a provision are extreme, despite its reasonable and diligent efforts and precautions, McGuireWoods respectfully requests that the Court grant its Motion for Entry of Clawback Provision, and enter an Order Entering a Clawback Provision.

Respectfully submitted,


 /s/ R. Lawrence Ward
R. Lawrence Ward                              KS #17343
James M. Humphrey                          KS #70664
Cathy J. Dean                                    KS #22367
Polsinelli Shughart PC
120 W. 12th Street, Suite 1700
Kansas City, MO  64105
Telephone: (816) 421-3355
Facsimile: (816) 374-0509
lward@polsinelli.com
jhumphrey@polsinelli.com
cdean@polsinelli.com

2654380.03

Phillip R. Garrison                                    KS #78182
Polsinelli Shughart PC
901 St. Louis Street, Suite 1200
Springfield, MO  65806
Telephone: (417) 869-3353
Facsimile: (417) 869-9943
pgarrison@polsinelli.com

Of counsel:
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000

Attorneys For Defendant McGuireWoods LLP

2654380.03

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 27, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

John M. Edgar
David W. Edgar
John D. Stasny
Edgar Law Firm LLC
1032 Pennsylvania Avenue
Kansas City, MO 64105

Attorneys for Plaintiff

 /s/ R. Lawrence Ward
Attorney for Defendant

2654380.03