## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

**ERIC C. RAJALA, as Bankruptcy**
**Trustee for Ethanex Energy, Inc.,**

                                               **Civil Action**

            **Plaintiff,**                             **No. 08-2638-CM-DJW**

**v.**

**McGUIRE WOODS, LLP,**

            **Defendant.**

### <u>MEMORANDUM AND ORDER</u>

Pending before the Court are Plaintiff's Motions for Protective Order (ECF Nos. 65 & 67) For the reasons set forth below, Plaintiff's motions are denied.

**I.**      **Nature of the Case**

Plaintiff Eric C. Rajala, as bankruptcy trustee for Ethanex Energy, Inc. ("Ethanex"), brings this action against the law firm of McGuire Woods to recover for violations of the Securities Exchange Act of 1934 and the Kansas Uniform Securities Act. Plaintiff also asserts common law claims of fraud, tortious interference with business expectancies, legal malpractice, negligent supervision, and breach of fiduciary duties.

According to the Third Amended Complaint, Ethanex retained McGuire Woods to represent Ethanex in the process of becoming a public company and raising capital for the development of ethanol manufacturing plants. Plaintiff alleges that an attorney with McGuire Woods, Louis Zehil, used his position as a partner with McGuire Woods and as an attorney representing Ethanex to perpetrate a fraudulent scheme involving the sale of unrestricted securities of Ethanex.

## II. Motion for Protective Order Pertaining to Subpoena Served on Kirkland & Ellis, LLP (ECF No. 65)

### A. Background Information

Plaintiff's Motion for Protective Order (ECF No. 65) ("First Motion for Protective Order") pertains to a document subpoena served by Defendant on the law firm of Kirkland & Ellis, LLP ("Kirkland & Ellis"). According to Plaintiff's disclosures, Kirkland & Ellis "was hired as interim counsel and provided advice to Ethanex related to the misconduct at McGuire Woods" that gives rise to this lawsuit.[1] Kirkland & Ellis is not a party to this lawsuit.

The subpoena commands Kirkland & Ellis to produce the following documents:

1. All documents related to McGuire Woods LLP's work for Ethanex;

2. All documents or correspondence sent to you from any third party regarding or related to Ethanex, including but not limited to McGuire Woods LLP;

3. All documents or correspondence sent from you to any third party regarding or related to Ethanex, including but not limited to McGuire Woods LLP;

4. All public filings, including all drafts of public filings, prepared by you or filed by you on behalf of Ethanex;

5. All documents concerning any and all meetings and conversations involving Ethanex or McGuire Woods LLP; and

6. All billing records related to your representation of Ethanex.[2]

The subpoena was issued by the United States District Court for the Northern District of Illinois. It was served on Kirkland & Ellis at its Chicago, Illinois office, and commanded Kirkland & Ellis to produce the documents at a location in Chicago.

---

[1]Pl.'s Mem. in Supp. of First Mot. for Protective Order (ECF No. 66) at 1 (citing Pl.'s Initial Disclosures).

[2]Subpoena, attached as Ex. 6 to Notice of Rule 45 Subpoenas Requesting the Produc. of Docs. and Other Tangible Things (ECF No. 57).

In support of his Motion for Protective Order, Plaintiff argues that "[t]o allow discovery to proceed directly from Kirkland & Ellis would . . . constitute annoyance, embarrassment, oppression and undue burden and expense justifying a protective order."[3]  Plaintiff contends that the subpoena requires the production of privileged and protected documents, and that Ethanex is the privilege holder and should therefore be given the opportunity to exercise its rights to assert that privilege. Plaintiff further contends that "[t]he subpoena subjects Kirkland & Ellis (a non-party) to undue burden and expense because Ethanex is already in possession of documents from Kirkland & Ellis. Ethanex is capable of obtaining any additional documents from Kirkland & Ellis responsive to the subpoena, reviewing all documents for applicable privileges, producing any non-privileged documents and providing a privilege log."[4]

Plaintiff asks the Court to enter a protective order that would allow Plaintiff, rather than Kirkland & Ellis, to respond to the subpoena.  Plaintiff states that Ethanex already possesses ten boxes of materials that it has obtained directly from Kirkland & Ellis.  Under Plaintiff's proposal, Plaintiff would (1) obtain any additional documents from Kirkland & Ellis that are responsive to the subpoena, (2) review those additional documents and the ten boxes of materials already in Ethanex's possession, and (3) determine which of those documents are privileged.  Plaintiff would then prepare a privilege log and produce the log to Defendant along with any non-privileged documents responsive to the subpoena.  Plaintiff contends that requiring Kirkland & Ellis to respond directly to the subpoena would force on Kirkland & Ellis the undue burden and expense of reviewing documents for privilege, compiling a privilege log, and producing once again many of the same

---

[3]Pl.'s Mem. in Supp. of First Mot. for Protective Order (ECF No. 66) at 3.

[4]Pl.'s First Mot. for Protective Order (ECF No. 65) at 2.

documents that it has already provided to Ethanex. Plaintiff also maintains that it "would deny Ethanex the right to make its own determinations in this case regarding assertions of privilege or any other protection from discovery."[5]

Plaintiff requests, pursuant to Federal Rule of Civil Procedure 26(c), that the Court issue a protective order that:

1.    immediately stays the discovery to which the subpoena to Kirkland & Ellis is directed, pending a ruling on this motion;

2.    requires Defendant to withdraw the subpoena issued to Kirkland & Ellis;

3.    prohibits Defendant from obtaining documents directly from Kirkland & Ellis for this case; and

4.    requires that any discoverable documents sought by Defendant from Kirkland & Ellis s be obtained by Plaintiff, who would then produce to Defendant any non-privileged documents within the scope of discovery, along with a privilege log.[6]

Defendant urges the Court to deny Plaintiff's Motion for Protective Order for two primary reasons. First, Defendant asserts that this Court does not have jurisdiction to rule on the motion. According to Defendant, Plaintiff is effectively asking the court to quash or modify the subpoena, which is a task that only the issuing court (the United States District Court for the Northern District of Illinois) has the jurisdiction and authority to do. Second, Defendant asserts that even if this Court were to decide that it has jurisdiction to entertain Plaintiff's motion, Plaintiff has failed to show the requisite good cause for such a protective order because (1) the assertion of privilege objections does not, as a matter of law, give rise to "good cause" within the meaning of Rule 26(c), and (2) Plaintiff

_____

[5]Pl.'s Mem. in Supp. of First Mot. for Protective Order (ECF No. 66) at 2-3.

[6]Pl.'s First Mot. for Protective Order (ECF No. 65) at 2-3.

fails to show how Kirkland & Ellis' privilege review and preparation of a privilege log would impose an undue burden on Kirkland & Ellis.

### B.     Analysis

The Court must determine, as a threshold matter, whether it has jurisdiction to entertain Plaintiff's motion since the subpoena was issued by the District Court for the Northern District of Illinois rather than this Court.  To determine that issue, the Court must examine the interplay between motions to quash/modify subpoenas and motions for protective order.  Before examining that interplay, the Court will set forth the basic rules relating to motions to quash/modify subpoenas and motions for protective order.

Federal Rule of Civil Procedure 45 governs subpoenas.  Subsection (a)(2)(C) of Rule 45 requires that a subpoena for the production of documents be issued from the court for the district where the production is to be made.[7]  Subsection (c)(3) addresses the quashing or modification of subpoenas, and states that "[o]n timely motion, the *issuing court* must quash or modify a subpoena . . . ."[8]  Relying on this language, courts have uniformly held that only the issuing court has the authority to quash or modify a subpoena.[9]  This is the rule because "[s]ubpoenas issued under Rule

_____

[7]Fed. R. Civ. P. 45(a)(2)(C).  The Rule provides:  "A subpoena must issue as follows: . . . for production or inspection, if separate from a subpoena commanding a person's attendance, from the court for the district where the production or inspection is to be made."

[8]Fed. R. Civ. P. 45(c)(3)(A) (emphasis added).

[9]*See, e.g., In re Sealed Case*, 141 F.3d 337, 341 (D. C. Cir. 1998) ("[O]nly the issuing court has the power to act on its subpoenas . . . and nothing in the rules even hints that any other court may be given the power to quash or enforce them."); *Jennings v. Short-Elliott-Hendrickson, Inc.*, No. 05-cv-01056-LTB-MEH, 2007 WL 2045497, at *1 (D. Colo. July 10, 2007) ("Pursuant to Fed. R. Civ. P. 45(c)(3)(A), only the court by which a subpoena was issued may quash or modify a subpoena."); *In re Diet Drugs Phentermine/Fenfluramine/Dexfenfluramine Prods. Liability Litig.*, No. 04-MC-00403-SAC, MDL No. 1203, 2004 WL 838074, at *1 (D. Kan. Mar. 24, 2004) ("As (continued...)

45 'constitute process of the issuing court, and are enforced by that same court.'"[10] Accordingly, the court in which the action is filed lacks jurisdiction to rule on subpoenas issued from other courts.[11]

Motions for protective order, as opposed to motions to quash or modify subpoenas, are governed by Federal Rule of Civil Procedure 26(c). Rule 26(c)(1) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending."[12] It further provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" and that such an order may forbid the discovery, specify the terms under which the discovery may be had, or prescribe a different method of discovery than the one selected by the party seeking the discovery.[13]

In light of the foregoing, it is clear that this Court does not have the authority or jurisdiction to entertain a motion to quash or modify the subpoena served on Kirkland & Ellis. The Court presumes this is the reason Plaintiff did not file a motion to quash but instead a motion for protective order. But does the fact that Plaintiff filed his motion as one for protective order end the Court's

---

[9](...continued)
suggested by Rule 45(c)(3)(A) of the Federal Rules of Civil Procedure, the court issuing a subpoena is the only court with the authority to quash or modify the subpoena."); *see also Pilcher v. Direct Equity Lending*, No. 99-1245-JTM-KMH, 2000 WL 33170865, at *4 (Dec. 22, 2000) (denying motion to quash subpoena filed with the court in which the action was pending rather than with the issuing court because only the issuing court is "vested with jurisdiction to quash or modify the subpoena").

[10]*Jennings*, 2007 WL 2045497, at *1 (quoting *In re Matter of Certain Complaints under Investigation*, 783 F.2d 1488, 1495 (11th Cir. 1986)).

[11]*In re Digital Equip. Corp.*, 949 F.2d 228, 231 (8th Cir. 1991); *Davis*, 2009 WL 1537892, at *2.

[12]Fed. R. Civ. P. 26(c)(1).

[13]*Id.*

jurisdictional inquiry? Defendant asserts that it does not, and argues that the mere styling of Plaintiff's motion as a Rule 26(c) motion for protective order does not confer jurisdiction on this Court to resolve this dispute. Defendant maintains that regardless of how Plaintiff styles his motion, it does not change the fact that Plaintiff is, in essence, asking the Court to modify the Kirkland & Ellis subpoena by changing the discovery method set forth in the subpoena. Thus, according to Defendant, this means that only the issuing court, i.e., the Northern District of Illinois, has jurisdiction to rule on the motion.

In support of its position, Defendant relies on a District of Colorado case, *Davis Audio Visual LLC v. Greer,*[14] in which the plaintiff served on various non-parties document subpoenas issued from courts in other districts. The defendant moved in the District of Colorado, where the action was pending, for a protective order limiting the discovery of the subpoenaed documents on grounds that the documents were proprietary and confidential.[15] The Colorado court denied the motion for protective order, holding that it lacked jurisdiction "to decide a matter which would effectively quash or modify subpoenas pending outside of this district."[16] Defendant in this case urges the Court to rule similarly here, and hold that it lacks jurisdiction to decide Plaintiff's motion because granting the relief Plaintiff requests would effectively modify the subpoena pending in the Northern District of Illinois.

Plaintiff counters that this Court has jurisdiction to entertain Plaintiff's motion because it is a Rule 26(c) motion for protective order and not a Rule 45(c)(3) motion to quash or modify a subpoena. Plaintiff bases his counterargument on another District of Colorado case, *Straily v. UBS*

---

[14]No. 09-0175-ZLW-MEH, 2009 WL 1537892 (D. Colo. May 28, 2009).

[15]*Id.* at *1.

[16]*Id.* at *3.

*Financial Services, Inc.*[17]  In *Straily*, the plaintiff filed a motion for protective order pertaining to

a document subpoena issued from the United States District Court in the Southern District of New

York, which the defendant served on a non-party in New York City.[18]  The plaintiff filed her  motion

in the District Court for the District of Colorado where the action was filed, and sought to prevent

the discovery from going forward on grounds that the subpoenaed documents were irrelevant.[19]  In

granting the motion, the court in the District of Colorado first noted the general rule that the court

where the action is pending lacks jurisdiction to rule on subpoenas issued from other districts.[20]  The

court then stated:  "It is beyond cavil, however, that the broad outlines of discovery in a civil case

are controlled by the court where the case is filed."[21]  In stating this proposition, the court cited with

approval *Static Control Components, Inc. v. Darkprint Imaging*,[22] wherein the District Court for the

Middle District of North Carolina held that it had authority to enter a protective order pursuant to

its right to control the general outline of discovery even though the particular discovery dispute

arose from a subpoena issued in another district.[23]

The *Straily* Court then observed that the plaintiff had filed her motion for protective order

not to quash the subpoena but to seek protection from irrelevant discovery "pursuant to this court's

---

[17]No. 07-cv-00884, 2008 WL 5378148 (D. Colo Dec. 23, 2008).

[18]*Id*. at *1-2.

[19]*Id*. at *2.

[20]*Id.*

[21]*Id.*

[22]201 F.R.D. 431 (M.D.N.C. 2001).

[23]*Straily,* 2008 WL 5378148, at *2 (citing *Static Control*, 201 F.R.D. at 431).

control of discovery."[24]  The court held that "[a]s a party subject to the jurisdiction of this court, plaintiff is entitled to request this court to preclude any inquiry into areas that are clearly outside the scope of appropriate discovery."[25]

Plaintiff also relies on Magistrate Judge Humphreys' opinion in *Pilcher v. Direct Equity Lending*,[26] in which the plaintiff filed a motion to quash a subpoena issued by the Northern District of Texas.  Judge Humphreys found the plaintiff's motion "fatally flawed" because the plaintiff had filed the motion in the District of Kansas where the action was pending rather than in the court that had issued the subpoena.[27]  In denying the motion to quash, however, Judge Humphreys observed:

> Plaintiff's reliance on Rule 45 is unusual.  More typically parties join a motion to quash with a request for a protective order under Rule 26(c).  Under Rule 26(c), the court in which the action is pending or alternatively, the court which issued the subpoena, has jurisdiction to issue a protective order limiting discovery.[28]

Neither Plaintiff nor Defendant points the Court to any District of Kansas case directly on point.  While Plaintiff does refer the Court to Judge Humphrey's decision in *Pilcher*, the Court finds her statements that parties typically join a Rule 45 motion to quash with a Rule 26(c) motion for protective order and that the court has jurisdiction to issue a protective order in relation to a subpoena, to be mere dicta.  Furthermore, Judge Humphrey's discussion does not directly apply to this case and the particular circumstances under which Plaintiff has filed his motion for protective order.

---

[24]*Id*. at *2.

[25]*Id.*

[26]No. 99-2145-JTM-KMH, 2000 WL 33170865 (D. Kan. Dec. 22, 2000).

[27]*Id*. at *4.

[28]*Id*. n.8.

The Court must therefore look to case law from other jurisdictions. After conducting its own research and review of the relevant cases from other districts, the Court finds the *Straily* and *Static Control* decisions to be well reasoned and reflective of the majority view. The Court thus finds them to be controlling. At the same time, however, the Court does not agree with Plaintiff's application of those decisions to this the facts of this case.

*Static Control* is perhaps the most often-quoted decision on this issue. The *Static Control* case was a trade secret misappropriation case filed in the Middle District for the District of North Carolina.[29] One of Defendant's attorneys of record in the case was a Colorado attorney who was admitted pro hac vice. Plaintiff served a deposition subpoena duces tecum on that attorney in Colorado.[30] The subpoena was issued by the District Court for the District of Colorado, and directed the attorney to bring with him to the deposition any notes or recordings of conversations between himself and the plaintiff's employees.[31] Plaintiff argued that the court did not have jurisdiction to entertain the defendant's motion for protective order because the subpoena had been issued by the District of Colorado.[32] The defendant, on the other hand, argued that the court had the authority to rule on its motion because (1) the court had the authority to "appropriately control the general scope of discovery" in the case, and (2) the subpoenaed attorney had submitted himself to the court's jurisdiction by being admitted pro hac vice.[33] Thus, the defendant maintained that even though the

---

[29] 201 F.R.D at 433 n.2.

[30] *Id*. at 432-33.

[31] *Id*. at 433-34.

[32] *Id*. at 434.

[33] *Id.* at 433.

subpoena had been issued by the District of Colorado, the court had the authority and jurisdiction to determine whether it should be enforced.[34]

The court agreed with the defendant and concluded that it had the authority to rule on defendant's motion for protective order.[35]  In so ruling, the court stated:

> Plaintiff's position is correct, up to a point.  Rule 45(c) clearly directs the district court which issued the subpoena to rule on motions to quash or modify it.  However, that rule does not alter the broader concept that the district court in which an action is pending has the right and responsibility to control the broad outline of discovery.[36]

The court made it clear that its decision was not based on the fact that the subpoenaed party had submitted to the jurisdiction of the court by virtue of his pro hac vice admission.  The Court explained that although it had jurisdiction over all of the parties and the subpoenaed attorney, "this fact does not permit the court to usurp the Colorado court's authority to quash or modify the subpoena."[37]  The court observed that it was "enter[ing] the fray only because a party has filed a broad motion for a Rule 26(c) protective that discovery not be had or else be conducted on limited terms," which was an issue that "extend[ed] well beyond the matter of a specific subpoena."[38]

Other courts have relied on *Static Control* in ruling that they had jurisdiction to hear motions for protective order related to subpoenas issued in other jurisdictions.  For example, the District Court for the District of Arizona ruled in *Best Western International, Inc. v. Doe*[39] that it had jurisdiction

---

[34]*Id.*

[35]*Id.* at 434.

[36]*Id.*

[37]*Id.* n.5.

[38]*Id.*

[39]No. 06-1537-PHX-DGC, 2006 WL 2091695 (D. Ariz. July 25, 2006).

to determine the propriety of subpoenas that the plaintiff intended to have issued from other districts where the subpoenas implicated case-wide First Amendment issues. The plaintiff's action was filed in the District Court for the District of Arizona against various John Doe defendants and alleged that the John Does defendants had anonymously posted defamatory messages about the plaintiff on an Internet site.[40] The plaintiff filed a motion to conduct expedited discovery, including the service of subpoenas on various out-of-state Internet service providers to obtain the names of the John Doe defendants who had allegedly made the anonymous postings.[41] One of the John Doe defendants entered an appearance and filed an opposition to the plaintiff's motion for expedited discovery, arguing that the Arizona court should rule the subpoenas were not proper because the John Doe defendants would lose their First Amendment rights to post anonymous messages if the subpoenas were enforced.[42] The plaintiff argued that the Arizona court had no jurisdiction to address the propriety of the subpoenas because they were issued from other districts.[43]

The Arizona court disagreed with the plaintiff, and relying on *Static Control*, held it had jurisdiction to rule on the subpoenas. The court explained as follows:

> Rule 45(c) does provide that subpoenas should be enforced by the district court which issued them, but this rule "does not alter the broader concept that the district court in which an action is pending has the right and responsibility to control the broad outline of discovery." *Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, 434 (M.D.N.C. 2001). General discovery issues should receive uniform treatment throughout the litigation, regardless of where the discovery is pursued. Courts have also recognized that a party's "'discovery rights [in other districts] can rise no higher than their level in the district of trial.'" *Id*. (quoting *Finches v. Keller Indus*., Inc., 129 F.R.D. 123, 125 (M.D.N.C. 1990)).

---

[40]*Id*. at *1.

[41]*Id*.

[42]*Id*.

[43]*Id*. at *2.

The First Amendment implications of BWI's proposed discovery constitutes a significant issue in this case. Not only are the First Amendment rights of fundamental importance to the John Doe Defendants, but they also will be preserved or defeated by discovery orders. To the extent that Defendants have a First Amendment right to anonymous speech (a right addressed below), the right will be lost if BWI is permitted to learn the speakers' identities through discovery. This right will be at issue in every district where BWI's subpoenas are served. It makes little sense to leave such a central issue to district-by-district determination.

The Court concludes that it can and should address the First Amendment issues raised by BWI's discovery motion. As the court noted in *Static Control*, "[t]his issue extends well beyond the matter of a specific subpoena." *Id.* at 434 n. 5.[44]

In *Platinum Air Charters, LLC v. Aviation Ventures, Inc.*,[45] the District Court for the District of Nevada also relied on *Static Control* to conclude that it had jurisdiction to rule on a motion for protective order pertaining to subpoenas issued by other districts.[46] In *Platinum Air,* the plaintiff sued the defendant for breach of an air charter services agreement, and it served subpoenas on various travel agencies that did business with the defendant.[47] The subpoenas, which were issued by a federal court in California, were served on the travel agencies to elicit deposition testimony and documents relating to certain pricing information and passenger identities.[48] The defendant moved for a protective order preventing the depositions, arguing that the depositions would reveal trade secrets not only of the defendant but of the travel agencies being deposed. Defendant also argued that under FAA regulations and statutory law it was obligated to protect passenger information. It also argued

---

[44]*Id.*

[45]No. 2:05-cv-01451-RCJ-LRL, 2007 WL 121674 (D. Nev. Jan. 10, 2007).

[46]*Id.* at *3.

[47]*Id.* at *1.

[48]*Id.*

13

that the broad scope of the document requests would be unduly burdensome to the travel agencies.[49] The plaintiff opposed the motion for protective order and argued that the court should abstain from ruling on the motion because only the court issuing the subpoenas had jurisdiction to rule on the subpoenas.[50]

In ruling on the motion for protective order, the District Court for the District of Nevada first recognized that Rule 45(c) sets forth the general rule that subpoenas should be enforced by the district court that issued them.[51] However, it relied on *Static Control* to hold that Rule 45(c) does not alter the general principle that the court in which the action is pending "has the right and responsibility to control the broad outline of discovery."[52] It went on to state that "[g]eneral discovery issues should receive uniform treatment throughout the litigation, regardless of where the discovery is pursued."[53] Because the court found that the issues raised by the defendant's motion for protective order "extend[ed] well beyond the matter of a specific subpoena," it concluded that it had not only the right, but also the obligation, to address the issues raised in the motion.[54]

From these cases, the Court gleans the following rules: Notwithstanding the Rule 45(c)(3) principle that the district court which issues the subpoena has the exclusive authority to rule on motions to quash or modify the subpoena, this Court has the authority and responsibility to control the broad outline and scope of discovery in the case. Thus, when a party files a motion for protective

---

[49]*Id.*

[50]*Id.* at *3.

[51]*Id.*

[52]*Id.* (quoting *Static Control*, 201 F.R.D. at 201).

[53]*Id.*

[54]*Id.*

order in this Court that would have the effect of quashing or modifying a subpoena issued from another district, this Court may entertain that motion where (1) the issues raised are central to the case and extend beyond the specifics of the particular subpoena, and (2) the requested ruling is necessary to insure that general discovery issues will receive uniform treatment, regardless of the district in which the discovery is pursued . Certainly, this Court has the obligation to insure that another district does not broaden the scope of discovery beyond what would be allowed in this Court or otherwise enter an order that would be inconsistent with the scope of discovery already drawn by this Court. Furthermore, the Court holds that the party who files the motion for protective order must bear the burden to show why this Court should depart from the general rule of not exercising jurisdiction over subpoenas issued from other jurisdictions and to persuade the Court why it is necessary for the Court to entertain the motion for protective order to control the broad outline and scope of discovery.

Having articulated this standard, the Court must now apply it to the facts of this case. Does Plaintiff's Motion for Protective Order raise issues that are central to the case and which extend beyond the matters addressed in this specific subpoena? Does Plaintiff's motion implicate the broad outline and contours of discovery in the case? And is it necessary for the Court to entertain Plaintiff's motion in order insure that general discovery issues will receive uniform treatment? The Court answers all of these questions in the negative. Clearly, Plaintiff's assertion that the subpoena subjects Kirkland & Ellis to undue burden and expense does not raise any general concerns or issues beyond the scope of this particular subpoena. Thus, the Court finds that Plaintiff has not met his burden with respect to the undue burden argument he makes.

The Court also finds that Plaintiff has not met his burden with respect to the attorney-client privilege arguments he makes. While privilege issues might in some cases extend beyond the

specific subpoena and raise issues that are central to the case so as to require case-wide consistent rulings, the Court does not find that to be the case here. Furthermore, Plaintiff has not convinced the Court that his particular privilege concern is a valid one. As Defendant points out, Plaintiff will not be deprived of the opportunity to work with Kirkland & Ellis to review the documents and assert any privilege objections Ethanex may have. While Ethanex is the privilege holder, its attorneys at McGuire Woods not only have the right[55] but the obligation[56] to assert the privilege on Ethanex's behalf. Furthermore, the Court notes that the procedure for asserting attorney-client privilege objections and preparing a privilege log is identical under both Rule 26(b)(5)(A) and Rule 45(d)(2)(A). Both rules state that the party (or the subpoenaed entity or person) who withholds documents under a claim of privilege or work product protection must "expressly make the claim"

---

[55]*See Fisher v. United States*, 425 U.S. 391, 402 n.8 (1976) ("[I]t is universally accepted that the attorney-client privilege may be raised by the attorney.").

[56]Under both federal and Kansas law, an attorney is prohibited from divulging confidential communications in the absence of a waiver by the client. Under federal law, not only is an attorney permitted to invoke the privilege in behalf of the client, but he/she is under a duty to assert the privilege. *See In re Grand Jury Proceedings*, 831 F.2d 222, 225 n.9 (11th Cir. 1987) ("An attorney is required to assert the attorney-client privilege when the client requests him to do so and there is a reasonable basis to conclude that the disclosure of information would breach the privilege."); *In re von Bulow*, 828 F.2d 94, 100 (2d Cir. 1987) ("Of course, the privilege belongs solely to the client and may only be waived by him. An attorney may not waive the privilege without his client's consent."). Similarly, Kansas Rule of Professional Conduct 1.6 provides that an attorney is prohibited from divulging information relating the representation of a client unless the client consents after consultation. This rule applies to attorney-client privileged information. *See* Kan. Rule Prof'l Conduct & cmt. 5. Also, under Kansas law, "it is well settled that only clients can waive the privilege." *IMC Chemicals, Inc. v. Niro Inc*., No. CIV. A. 98-2348-JTM-DJW, 2000 WL 1466495, at *13 (D. Kan. July 19, 2000). Furthermore, "[w]hen information is disclosed within the confines of the attorney-client relationship, this imposes upon the attorney a general duty not to disclose this information. Accordingly, if an attorney violates his duty of confidentiality, this cannot be said to waive his client's privilege." *Id.* at *14.

16

and describe the nature of the withheld documents "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."[57]

In light of the above, the Court holds that Plaintiff has failed to show how the subpoena directed to Kirkland & Ellis implicates issues that go beyond the matters raised in this particular subpoena or how those issues are central to the case. Nor has Plaintiff shown that it is necessary for this Court to address the subpoena in order to control the general scope of discovery or insure that discovery issues are treated in a consistent manner. The Court therefore holds that it does not have the authority or jurisdiction to rule on Plaintiff's First Motion for Protective Order, and, thus, the motion is denied.

### III. Motion for Protective Order Pertaining to Subpoena Served on Muse, Stancil & Co. (ECF No. 67)

This Motion for Protective Order ("Second Motion for Protective Order") concerns a document subpoena served by Defendant on a non-party, Muse, Stancil & Co., ("Muse"). According to Plaintiff, Muse "performed confidential consulting work for Ethanex relating to proposed ethanol projects and the technology Ethanex would use."[58] Plaintiff states that "[t]he renewable energy industry is competitive, and the bankruptcy estate for Ethanex has a strong interest in preventing public disclosure of valuable information relating to its proposed projects and the technology Ethanex would use."[59]

---

[57]Fed. R. Civ. 26(b)(5)(A); Fed. R. Civ. P. 45(d)(2)(A).

[58]Pl.'s Mem. in Supp. of Second Mot. for Protective Order (ECF No. 68) at 1.

[59]*Id.*

The subpoena commands Muse to produce the following documents:

1.  All documents setting forth the nature, scope, and terms of your engagement by Ethanex, or by any person or entity on behalf of Ethanex, including but not limited to engagement letters or contracts;

2.  All documents that were created by you within the scope of your engagement with Ethanex or with any other person or entity on behalf of Ethanex;

3.  All documents reflecting work performed by any persons or entities outside of your company who performed Ethanex-related work whether at your direction or the [sic] at the direction of a third party; [and]

4.  All documents concerning any meetings, conversations and correspondence between you and any other party regarding Ethanex, including but not limited to McGuire Woods LLP; Bagell, Josephs, Levine & Company, LLC . . . .[60]

This subpoena was issued by the United States District Court for Northern District of Texas. It was addressed to Muse at its offices in Addison, Texas, and commanded Muse to produce the documents at a location in Dallas, Texas..

Plaintiff seeks a protective order pursuant to Federal Rule of Civil Procedure 26(c)(1)(g) to protect the confidentiality of trade secret and other confidential research, development, or commercial information that Muse may produce in response to the subpoena. Plaintiff asserts that Defendant's subpoena "seeks documents that the Court should protect from public dissemination because of the value to Ethanex's bankruptcy estate in the confidentiality of the documents."[61] Further, Plaintiff states that Defendant and Muse have discussed the proper confidential treatment of the documents "pursuant to their own determinations"; however, "Ethanex has its own interest in determining the manner in which these confidential documents should be protected."[62]

---

[60]Subpoena, attached as Ex. 1 to Notice of Rule 45 Subpoenas Requesting the Produc. of Docs. and Other Tangible Things (ECF No. 57).

[61]P.'s Mem. in Supp. of Second Mot. for Protective Order (ECF No. 68) at 2.

[62]*Id.*

Plaintiff asks the Court to enter a protective order that provides as follows:

Muse Stancil & Co. is a non-party to the present case. Defendant filed on March 26, 2010, a notice of its intent to serve a subpoena seeking documents from Muse Stancil & Co. (Doc. 57). Due to Plaintiff's interest in the confidentiality of these documents, Defendant and its employees, attorneys, consultants, and agents are hereby ENJOINED from using documents obtained from Muse Stancil & Co. in the course of discovery for this action, except in the preparation for and conduct of any hearing or trial in this action, and from disclosing same to any other person, except:

(a)     the parties in the above-captioned matter, including current or former employees and/or agents fo the parties that are assisting with this litigation;

(b)     counsel of record and other counsel for the parties and counsel's employees and/or agents that are assisting with this litigation;

(c)     outside experts and consultants working with counsel for the parties, which are requested by counsel, in good faith, to provide assistance in the conduct of this action;

(d)     the Court (including court reporters, stenographic reporters and other Court personnel); and

(e)     any other person as to whom the producing party agrees in writing.

Notwithstanding any other provisions of this Order, it shall have no effect upon, and shall not limit or restrict, Defendant's use of documents from its own files or information that Defendant already has in its possession or has access to under preexisting agreements.[63]

The proposed protective order would apply to *all* documents produced by Muse; however,

Plaintiff states that he is "is willing to revisit the necessity of maintaining the confidentiality of

individual documents within the production" after the documents have been produced and Plaintiff

has had the opportunity to conduct his own review of the documents.[64]  Plaintiff contends that in the

---

[63]Pl.'s Proposed Protective Order, attached as Ex. 1 to Pl.'s Second Mot. for Protective Order (ECF No. 67).

[64]Pl.'s Mem. in Supp. of Second Mot. for Protective Order (ECF No. 68) at 2.

interim, however, the protective order must apply to all documents that Muse produces in order to prevent Defendant from publicly disclosing them.[65]

Defendant opposes the motion for several reasons. First, it argues that the Court lacks jurisdiction to entertain Plaintiff's motion for reasons similar to those discussed above with respect to Plaintiff's First Motion for Protective Order. Defendant contends that only the court which issued the subpoena, i.e., the Northern District of Texas, has the authority and jurisdiction to modify the subpoena in the manner requested by Plaintiff. Further, Defendant asserts that even if the Court holds it has jurisdiction to hear the motion, it should nevertheless decline to entertain it because Plaintiff failed to confer with Defendant, as required by Federal Rule of Civil Procedure 26(c)(1), prior to filing the motion. If the Court decides to hear the motion, Defendant urges the Court to deny the motion because Plaintiff has failed to establish good cause for it in the following respects: (1) the protective order would apply to all documents that Muse produces regardless of their content; (2) Plaintiff fails to establish that any of Muse's documents are trade secrets or other materials within the meaning of Rule 26(c)(1)(g); (3) Plaintiff fails to show any serious injury that would result in the absence of a protective order; and (4) the protective order is too narrowly drawn in terms of the purposes for which Defendant may use the subpoenaed documents.

The Court is not persuaded by Defendant's argument that the Court lacks jurisdiction to entertain Plaintiff's motion. The motion does not seek to quash or modify the subpoena nor does it seek to prevent the production of any documents. Furthermore, the motion does not require the Court to exercise jurisdiction over the non-party Muse. Rather, the motion asks the Court to exercise jurisdiction over Defendant and its employees and attorneys to prohibit them from using the documents outside of the lawsuit and from disclosing the documents except to certain specified

---

[65]*Id.*

individuals.  Thus, the Court holds that it possesses the requisite jurisdiction and authority to entertain the motion.

With respect to conferring, the Court finds, as best as it can determine, that Plaintiff satisfied the duty to confer under both Fed. R. Civ. P. 26(c)(1) and D. Kan. Rule 37.2.  The Court thus declines to deny the motion on that basis.

The Court, however, does agree with Defendant that Plaintiff has failed to meet his burden to establish good cause for the protective order.  In *University of Kansas Center for Research, Inc. v. United States*,[66] this Court addressed blanket protective orders that seek to protect against the disclosure of trade secret information.  The Court first noted that a party who seeks a protective order under Rule 26(c)(1)(g) that trade secret information not be revealed or be revealed only in a specified way must first establish that the information sought to be protected is indeed a trade secret.[67]  The party must then show that the disclosure of the trade secret information would "result in a clearly defined and very serious injury."[68]  To establish such an injury, the moving party must "make a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[69]

The Court would not be surprised if some of the Muse documents do contain trade secret information; however, the proposed protective order does not specify certain documents or categories of documents that would be protected from disclosure.  Rather, the proposed protective order applies

---

[66]No. 08-2565-JAR-DJW, 2010 WL 571824 (D. Kan. Feb. 12, 2010).

[67]*Id*. at *6 (citing *In re Cooper Tire and Rubber, Inc*., 568 F.3d 1180, 1190 (10th Cir. 2009); *Centurion Indus., Inc. v. Warren Steurer & Assocs*., 665 F.2d 323, 325 (10th Cir. 1989)).

[68]*Id*. at *7(quoting *Flint Hills Scientific, LLC v. Davidchack,* No. 00-2334-KHV-DJW, 2001 WL 1718291, at *2 (D. Kan. Dec. 3, 2001); *Western Res., Inc. v. Union Pac. R. Co.*, No. 00-2043-CM-DJW, 2001 WL 1718370, at *5 (D. Kan. Sept. 12, 2001)).

[69]*Id.* (internal quotations and citations omitted).

to all "documents obtained from Muse . . . in the course of discovery."[70]  Furthermore, Plaintiff fails in his motion to establish that any particular documents or categories of documents— much less every single document—would qualify as trade secret material within the meaning of Rule 26(c)(1)(G).  Finally, Plaintiff fails to demonstrate how all of the documents obtained from Muse would result in a clearly defined and very serious injury to Plaintiff.  For these reasons, the Court agrees with Defendant that the motion should be denied.

The Court also agrees that the proposed protective order is too narrowly drawn with respect to the purposes for which Defendant may use the Muse documents.  The proposed protective order states that Defendant and its employees and attorneys are prohibited "from using documents obtained from Muse . . . except in the preparation for and conduct of any hearing or trial in this action."[71]  As Defendant points out, this provision would prevent Defendant from using the documents in any pleadings, discovery motions, or motions for summary judgment.  It would also prevent Defendant from using the documents in the course of discovery or in working with its experts.

In light of the foregoing, the Court must deny Plaintiff's Second Motion for Protective Order.  The denial will, however, be without prejudice, and the Court encourages the parties to confer regarding the terms of a protective order that would meet the standards set forth herein.  The Court is hopeful that with sufficient conferring and cooperation, the parties will be able to reach an agreement about such a protective order.

---

[70]Pl.'s Proposed Protective Order, attached as Ex. 1 to Pl.'s Second Mot. for Protective Order (ECF No. 67).

[71]*Id.*

**IT IS THEREFORE ORDERED** that Plaintiff's First Motion for Protective Order (ECF No. 65) is denied.

**IT IS FURTHER ORDERED** that Plaintiff's Second Motion for Protective Order (ECF NO. 67) is denied without prejudice.

**IT IS FURTHER ORDERED** that each party shall bear his/its own expenses and attorney's fees incurred in connection with these motions.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 12th day of November 2010.

s/ David J. Waxse
David J. Waxse
U. S. Magistrate Judge

cc:     All counsel and *pro se* parties